CLAIBORNE, Judge.
This is a suit on a promissory note in the amount of $60,000.00 issued by Greenwell Commercial Properties, Inc., Claude Kirkpatrick, Wayne D. Swenson, and Southern Colonial Investment, Inc., to Realty Mart, Inc., and Seaborn R. Wicker, Jr. The note was issued on June 23, 1972, at the conclusion of protracted negotiations for the exchange of two Baton Rouge shopping centers by the defendants, Kirkpatrick and Swenson, with Ross E. Cox. For some time prior to that date, Cox, as owner of Highland South Shopping Center and the defendants, as owners of Colonial Shopping Center, had attempted to reach an exchange arrangement for those properties. Negotiations had been long and complex and had been broken off on several occasions. Throughout the bargaining, the defendants had been represented by Wicker, a real estate agent.
After a period of inaction, in February or March of 1972, efforts were again resumed to finalize the transaction and an agreement was reached which was signed by all of the parties on the date indicated above. As part of the closing of that agreement, the defendants issued the mortgage note sued upon here, ostensibly in payment of Wicker’s commission.
The controversy concerning its payment arose as a result of conversations between Cox and the defendants subsequent to the closing which for the first time cast some doubt upon the reason for the issuance of the note and the use of proceeds.
The record indicates that the defendants were interested in having an estimated 30,-000 square yards of paving work done at the Interstate Shopping Center. Prior to the resumption of the negotiations which led to the final agreement, Cox had agreed to do that work for $2.00 per square yard or $60,000.00. As the final bargaining for the exchange progressed, Wicker informed the defendants that Cox was not interested in taking their note for the paving but that Cox was going to pay Wicker a $60,000.00 commission, in addition to his agreed fee from the defendants of $15,000.00, and that it was Cox’s wish that they pay for the paving indirectly by making their mortgage note payable to Wicker. They were also instructed that Wicker was to do all of the negotiating and that they were not to have any direct discussions with Cox at all concerning the commission arrangement. They agreed to these conditions because of the failure of prior efforts and, at the exchange, executed the note according to Wicker’s instructions.
A letter agreement dated January 26, 1972 was prepared at Cox’s direction and *461 signed by all the parties incorporating this arrangement including a provision for payment of $15,000 and delivery of defendants’ note for $60,000 to Wicker as a commission, and a further provision relieving Cox of payment of any commission.
The defendants further relate that in later discussions with them concerning other amounts of money which they owed him, Cox stated that he could not understand their paying Wicker such a large commission when they were not in a position to pay to Cox a much smaller amount which he was demanding. At that time, it first became known to the appellees that Cox had intended to give the $60,000.00 worth of paving for the exchange and that he had not intended to be paid for it. He then further disclosed to them that he had not promised Wicker any commission at all for the closing of the transaction.
Plaintiff contends that the $60,000.00 was a commission promised him by Cox if the exchange was made and that it was to be paid by the defendants in lieu of paying Cox for the paving; further, that Cox would not have entered into the exchange unless the defendants paid that amount for the paving.
Cox’s testimony is, however, directly contrary to that version of those events. He categorically denied that he ever promised Wicker a commission of any amount on this transaction and that he intended to include the paving as part of the exchange. Additionally, he stated that his only interest in the $60,000.00 was that, if and when Wicker was paid, Cox was to receive the money and apply it against a prior debt in excess of $60,000.00 which Wicker owed to him.
By its nature, this case must be decided primarily on the credibility of the witnesses. That factor is best judged by the trier of fact and his conclusion in that regard will not be disturbed unless manifestly erroneous. Canter v. Koehring Company, 283 So.2d 716 (1973). The trial judge here found that the defenses of lack of consideration, or legal cause, and material misrepresentation, as asserted by the defendants, were proven. We affirm.
Wicker was hired by the defendants as their agent in this matter. As such, he is charged with certain responsibilities. In Texana Oil & Refining Co. v. Belchic, 150 La. 88, 90 So. 522 (1922), quoting U. S. v. Carter, 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769, the Supreme Court of Louisiana has said:
“ ‘The employee is duty bound not to act in antagonism or opposition to the interest of the employer. Every one, whether designated agent, trustee, servant, or what not, who is under contract or other legal obligation to represent or act for another in any particular business or line of business or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty as well as of law. The agent is not entitled to avail himself of any advantage that his -position may give him to profit beyond the agreed compensation for his service. He may not speculate for his gain in the subject-matter of his employment. He may not use any information that he may .have acquired by reason of his employment either for the purpose of acquiring property or doing any other act which is in opposition to his principal’s interests. He will be required to account to his employer for any gift, gratuity, or benefit received by him in violation of his duty, or any interest acquired adverse to his principal without a full disclosure, though it does not appear that the principal has suffered any actual loss by fraud or otherwise.’ 21 R.C.L. 825, § 10.
“The Supreme Court of the United States has said:
‘It is not enough for one occupying a confidential position who is shown to have secretly received a benefit from the opposite party to say, ‘You cannot show any fraud,’ or ‘You cannot show that you have sustained any loss from my conduct.’ Such an agent has the power to conceal his fraud and hide the injury *462 done his principal. It would be a dangerous precedent to lay down as law that, unless some affirmative fraud or loss can be shown, the agent may hold on to any secret benefit he may be able to make out of his agency . . . ”
The evidence upon which the trial judge relied is to the effect that Wicker made at least two incorrect assertions to the defendants which were directly related to this matter. First, he stated that he was to get a $60,000.00 commission from Cox for this transaction, and second, that Cox wanted to be paid $60,000.00 for the paving but that the payment was to be made directly to Wicker as his commission, not to Cox. Further, Wicker failed to tell his clients that Cox had agreed to include the paving as part of the transaction. These misrepresentations and omissions amount to a breach of this agent’s duty to his principals from which he cannot profit.
The plaintiff also specifically told the defendants that they were not to discuss the commission arrangement with Cox, a request which was reasonable in view of past experiences. Therefore, they were required to rely solely and completely on their agent.
The District Court correctly relied on Civil Code Article 1896 which provides as follows:
“By the cause of the contract, in this section, is meant the consideration or motive for making it; and a contract is said to be without a cause, whenever the party was in error, supposing that which was his inducement for contracting to exist, when in fact it had never existed, or had ceased to exist before the contract was made.”
The record compels the conclusion that had the defendants been fully informed by their agent, as they should have been, as to Cox’s intentions, they would not have executed the note in question. Therefore, a lawful cause did not exist for the obligation and it is without effect.
For the foregoing reasons, the judgment of the District Court will be affirmed, all the costs of this appeal to be paid by the appellants.
AFFIRMED.